**United States District Court**
**District of Massachusetts**

```
_____
                                )
ASYMMETRX MEDICAL, INC,         )
ASYMMETRX, INC.,                )
FRANK McKEON, PETER McKEON,     )
ANNIE YANG WEAVER,              )
NANA YAMAMOTO, and              )
MATTHEW VINCENT,                )      Civil Action No.
                                )      11-11079-NMG
         Plaintiff-counter-     )
         defendants,            )
                                )
         v.                     )
                                )
MARIA McKEON,                   )
         Defendant-             )
         counterclaimant.       )
_____ )
```

**MEMORANDUM & ORDER**

**GORTON, J.**

This case arises from a breakdown of relationships in the McKeon family and the consequential impact on the family business.  Plaintiffs Asymmetrx Medical, Inc. ("AMI"), AsymmetRx, Inc. ("AI"), Dr. Frank McKeon ("Dr. McKeon"), Peter McKeon ("Mr. McKeon"), Dr. Annie Yang Weaver ("Dr. Weaver"), Nana Yamamoto and Matthew P. Vincent ("Mr. Vincent") (collectively, "the plaintiffs" or the "counter-defendants") have filed a nine-count complaint against defendant Maria McKeon ("Ms. McKeon").[1]  Ms. McKeon filed an Answer and a Counterclaim, in her individual

---

[1] Plaintiffs' claims against defendant Dr. Jun Liu were voluntarily dismissed with prejudice on October 15, 2012.

-1-

capacity and on behalf of AI of which she claims to be the sole director.  Her Counterclaim contains eight counts.

Pending before the Court is 1) a motion for preliminary injunction filed by Ms. McKeon against AMI, Dr. McKeon, Mr. McKeon and 2) counter-defendants' motion to dismiss four of the eight counterclaims asserted by Ms. McKeon.

## I.   <u>**Factual Background**</u>

The facts of this case have been exhaustively recounted by Magistrate Judge Dein in her Report and Recommendation with respect to plaintiffs' motion for partial summary judgment which this Court accepted and adopted on March 21, 2012. <u>See</u> Docket Nos. 41, 46.  The following summary draws upon those findings and the averments contained within Ms. McKeon's Verified Counterclaim and motion for a preliminary injunction.

Counterclaimant Maria McKeon is an attorney practicing law in Connecticut and the sister of both counter-defendants Dr. Frank McKeon and Mr. Peter McKeon.  The three siblings all participated in the affairs of AI, an entity established to commercialize two drugs, one for the treatment of prostate cancer developed by Drs. McKeon and Weaver and the other for the treatment of macular degeneration developed by Dr. Liu.

At Dr. McKeon's behest, Ms. McKeon incorporated AI in May, 2001.  To this day, Ms. McKeon is listed in the corporate documents as its sole incorporator, director and officer.  She

was also the sole signatory on a bank account for AI.  No stock certificates were issued by AI and no formal shareholder agreement was ever executed.

For a number of years following the incorporation of AI, Ms. McKeon was actively involved in the company and purportedly served as its President.  Among other duties, she maintained its books and records, prosecuted its patents and negotiated agreements with various entities.  She negotiated a license agreement with the President and Fellows of Harvard College ("Harvard") wherein Harvard granted AI the commercialization rights to one of the drugs developed by Drs. McKeon and Weaver while they were at Harvard (called "the p63 antibody").  She also negotiated a retainer agreement with Proskauer Rose LLP ("Proskauer"), which until recently represented AI in an action in another session of this Court against several alleged infringers.

Eventually, the relationship between Ms. McKeon and Dr. McKeon soured, culminating with Ms. McKeon's withdrawal from participation in the day-to-day affairs of AI.  The parties dispute the nature and timing of Ms. McKeon's withdrawal but according to her it occurred in late 2007.  Importantly, this Court has previously found that genuine issues of material fact preclude a finding that she resigned as an officer of AI at that time.  Specifically, it found that 1) the parties continued to

treat each other as if there had been no resignation, 2) no formal notice of any change in the corporate officers or directors of AI was recorded with any state agency and 3) no shareholder vote was held to replace the officers and directors of the company.

Nevertheless, after the breakdown in their relationship, Ms. McKeon avers that Dr. and Mr. McKeon actively cut her out of the affairs of the business.  Following a failed attempt to negotiate a resolution of the intra-family dispute in March, 2008, counter-defendants, purportedly acting as AI's remaining shareholders, agreed that AI would be reconstituted as AMI.  AMI was incorporated in Delaware in June, 2008.

No steps were taken to dissolve AI, which continues to exist as a separate corporation and as the entity holding patent rights to the p63 antibody under the licensing agreement with Harvard.  In December, 2009, AI sub-licensed the right to commercialize that drug to Ventana Medical Systems, Inc. ("Ventana").  The Ventana licensing agreement has generated and will continue to generate significant revenue.  Mr. McKeon signed the sublicense while purportedly acting as President of AI, not AMI.

Ms. McKeon states that she was unaware that the Ventana agreement had been executed by Mr. McKeon as President or that any royalties had been paid by Ventana, until approximately May, 2010 when she received a distribution of income.  She also

-4-

alleges that Dr. and Mr. McKeon have accepted royalties from Ventana on behalf of AI under the Ventana license agreement which were deposited in a bank account at Bank of America opened in the name of AMI ("AMI bank account").  Between March, 2010 and December, 2010, Ms. McKeon asserts, five checks totaling $835,000 payable to AI from Ventana were delivered to AI at "Klarides Village Center, Suite 235, Seymour, CT 06483".  She also alleges that an additional $300,000 of settlement proceeds from the infringement suit brought by AI have been improperly deposited into the AMI bank account.

## II.   <u>Procedural History</u>

AMI filed the instant suit against Ms. McKeon in the Massachusetts Superior Court for Middlesex County in May, 2011. That suit was removed to this Court by Ms. McKeon in June, 2011 on diversity grounds.  Plaintiffs amended their complaint in August, 2011, prompting motions to dismiss from both Ms. McKeon and former defendant Dr. Liu.  Plaintiffs filed a motion for summary judgment shortly thereafter.

All pending motions were referred by this Session to Magistrate Judge Judith G. Dein.  On March 21, 2012, this Court accepted and adopted two Reports and Recommendations authored by Magistrate Judge Dein: one denying plaintiffs' motion for partial summary judgment and the other allowing, without prejudice, the motions to dismiss filed by Ms. McKeon and Mr. Liu.

In particular, the Court allowed the motion to dismiss without prejudice because various counts within the First Amended Complaint were brought on behalf of "AsymmetRx" without specifying whether the counts were on behalf of AI or AMI.  The First Amended Complaint therefore left the Court

> to speculate as to whether each claim is being asserted by AMI as the alleged successor to AI or on its own behalf and as to the factual basis for each claim.

The Court also dismissed plaintiffs' claim that defendant violated M.G.L. c. 93A ("Chapter 93A") because it concluded that the conduct complained of involved only an intra-corporate dispute not covered by Chapter 93A.

Consistent with the Court's ruling on the motions to dismiss, plaintiffs filed the Second Amended Complaint.  In her Answer to that complaint, filed on April 24, 2012, Ms. McKeon denied the allegations and asserted counterclaims under Connecticut law for 1) violations of the Connecticut Unfair Trade Practices Act ("CUTPA"), 2) tortious interference with contractual relations and business expectancies, 3) theft/larceny and 4) treble damages for theft/larceny pursuant to Conn. Gen. Stat. § 52-564, 5) conversion, 6) constructive trust, 7) breach of fiduciary duty and 8) declaratory judgment.  On the same day, Ms. McKeon filed a motion for preliminary injunction.

On May 22, 2012, counter-defendants filed a motion to dismiss the first, third, fourth and sixth counterclaims asserted

by Ms. McKeon.  The Court heard oral argument on the pending

motions in June, 2012 and took the matter under advisement.

### III. **Motion for Preliminary Injunction**

Ms. McKeon moves for a preliminary injunction enjoining

defendants Dr. McKeon, Mr. McKeon and AMI from, inter alia,

interfering with AI's contractual and business relationships,

diverting AI's business and income to themselves and breaching

their fiduciary duties to AI and Ms. McKeon in violation of

CUTPA.

### A.    Legal Standard

To obtain preliminary injunctive relief under Fed. R. Civ.

P. 65, a movant must demonstrate:

> (1) that she is likely to succeed on the merits, (2) that
> she is likely to suffer irreparable harm in the absence of
> preliminary relief, (3) that the balance of equities tips in
> her favor, and (4) that the injunction is in the public
> interest.

Peoples Federal Savings Bank v. People's United Bank, 672 F.3d 1,

9 (1st Cir. 2012) (quoting Winter v. Natural Res. Def. Council,

Inc., 555 U.S. 7, 20 (2008)).  The first two factors are the most

important and, in most cases, irreparable harm constitutes a

necessary threshold showing for an award of preliminary

injunctive relief. Gonzalez-Droz v. Gonzalez-Colon, 573 F.3d 75,

79 (1st Cir. 2009).  Finally, "[t]he burden of demonstrating that

a denial of interim relief is likely to cause irreparable harm

rests squarely upon the movant." Id. (quoting Charlesbank Equity

<u>Fund II</u> v. <u>Blinds To Go, Inc.</u>, 370 F.3d 151, 162 (1st Cir. 2004)).

### B.    Application

Ms. McKeon contends that if the counter-defendants are not enjoined, she will be irreparably harmed as a result of 1) ongoing damage to AI's business relationships and 2) by being deprived of her share of AI's income.  These allegations fail to demonstrate that she is likely to suffer irreparable harm if the injunctive relief sought is not awarded.

First, it is Ms. McKeon's burden to prove irreparable harm and her allegations are insufficient to carry that burden.  While Ms. McKeon claims that AI's ongoing business relationships will be irreparably harmed if Dr. and Mr. McKeon amend the Harvard license agreement, she has offered no evidence of any plans or preparations for them to do so.  <u>See</u> <u>Charlesbank Equity Fund II</u>, 370 F.3d at 162 ("A finding of irreparable harm must be grounded on something more than conjecture, surmise, or a party's unsubstantiated fears of what the future may have in store.").

Second, and perhaps most important, even if counter-defendants amended the Ventana license agreement it would not irreparably harm Ms. McKeon's interests.  Counter-defendants have taken the position that AI and AMI are one and the same entity (with the same shareholders, officers, directors, assets and liabilities).  If Ms. McKeon proves that she is, in fact, a

shareholder of AI, then counter-defendants concede she is also a

shareholder of AMI.  Accordingly, to the extent that AMI is the

successor to AI in an ongoing business relationship, neither Ms.

McKeon nor AI will sustain irreparable injury because she will be

entitled to her equivalent share in any proceeds received by AMI

that should have been paid to AI.

Third, any injury sustained as a result of counter-

defendants withholding of income from the Ventana license

agreement can be compensated with money damages.  Claims for

money damages, without more, do not merit the imposition of

injunctive relief. See Foxboro Co. v. Arabian Am. Oil Co., 805

F.2d 34, 36 (1st Cir. 1986) (stating that irreparable injury does

not arise "where only money is at stake and where the plaintiff

has a satisfactory remedy at law to recover the money at issue").

Fourth and finally, Ms. McKeon filed her motion for

injunctive relief 11 months after removing the lawsuit to this

Court.  She has apparently known about the alleged harm since

becoming aware of AMI in May, 2010.  Her unexplained delay in

seeking injunctive relief belies her claims for irreparable harm.

See Charlesbank Equity Fund II,  370 F.3d at 163 ("[D]elay

between the institution of an action and the filing of a motion

for preliminary injunction, not attributable to intervening

events, detracts from the movant's claim of irreparable harm.").

Because Ms. McKeon has not demonstrated a risk of

irreparable injury, the Court need not consider the other
elements required to obtain a preliminary injunction.  Her motion
for preliminary injunctive relief will be denied.

## IV.  **Plaintiff-Counter-defendants' Motion to Dismiss**

Pursuant to Fed. R. Civ. P. 12(b)(6), counter-defendants
move to dismiss Ms. McKeon's counterclaims for: a violation of
CUTPA (Count I), theft or larceny (Count III), treble damages
under Conn. Gen Stat. § 52-564 on the count for theft or larceny
(Count IV) and a request for imposition of a constructive trust
(Count VI).  For the reasons that follow, counter-defendants'
motion to dismiss will be denied in its entirety.

### A.    **Legal Standard**

District courts apply the same legal standard to motions to
dismiss counterclaims pursuant to Rule 12(b)(6) as they do when
reviewing motions to dismiss a complaint. See, e.g. Alongi v.
Moores Crane Rental Corp., Civ. No. 12-10055, 2012 WL 6589702, at
*2 (D. Mass. Dec. 17, 2012) (Zobel, J.) (applying familiar
12(b)(6) standard).

To survive a motion to dismiss for failure to state a claim
under Fed. R. Civ. P. 12(b)(6), the claim for relief must contain
"sufficient factual matter" such that it is actionable as a
matter of law and "plausible on its face." Ashcroft v. Iqbal, 556
U.S. 662, 667 (2009) (quoting Bell Atl. Corp. v. Twombly, 550
U.S. 544, 570 (2007)).  A claim is facially plausible if, after

accepting as true all non-conclusory factual allegations, the
court can draw the reasonable inference that the defendant is
liable for the misconduct alleged. <u>Ocasio-Hernandez</u> v.
<u>Fortuno-Burset</u>, 640 F.3d 1, 12 (1st Cir. 2011).

>    **B.    Choice of Law**

Counter-defendants first contend that Massachusetts law
governs the tort claims in this action and, as such, the first
and fourth counterclaims, which are based on Connecticut
statutes, and the third counterclaim, for "civil larceny" which
is not recognized in Massachusetts, must be dismissed.  As
counter-defendants have therefore identified a conflict between
Connecticut and Massachusetts law, the Court will consider which
state's law should apply. <u>See</u> <u>Levin</u> v. <u>Dalva Bros., Inc.</u>, 459
F.3d 68, 73 (1st Cir. 2006) (citation omitted) (noting initial
step in choice-of-law analysis is identification of an actual
conflict).

A federal court sitting in diversity applies the
choice-of-law framework of the forum state. <u>Id.</u> (citing <u>Klaxon</u>
<u>Co.</u> v. <u>Stentor Elec. Mfg. Co.</u>, 313 U.S. 487, 496 (1941)).  Under
Massachusetts choice-of-law rules, tort claims are governed by
the law of the state in which the injury occurred, unless another
state has a more significant relationship to the underlying cause
of action.  <u>Bergin</u> v. <u>Dartmouth Pharm., Inc.</u>, 326 F. Supp. 2d
179, 183 (D. Mass. 2004) (citation omitted).  "The place where

the injury occurred is the place where the last event necessary
to make an actor liable for an alleged tort takes place." Dunfey
v. Roger Williams Univ., 824 F. Supp. 18, 21 (D. Mass. 1993)
(internal quotation omitted).

Both Connecticut and Massachusetts arguably have a
significant relationship to the events at issue.  On the one
hand, counter-defendants Dr. and Mr. McKeon reside in
Massachusetts, AMI's principal place of business is in
Massachusetts and the source of both streams of AI's income (the
Harvard license agreement and the litigation settlement funds
held by Proskauer Rose) is in Massachusetts.  On the other hand,
Ms. McKeon resides in Connecticut and operated AI from that state
between 2001 and 2007.

Because choice-of-law analysis focuses on the location of
the injury, the Court is persuaded that Connecticut law applies
to Ms. McKeon's counterclaims.  In particular, the injuries
alleged in the counterclaims at issue occurred in Connecticut.
The third and fourth counterclaims allege theft of $835,000 in
proceeds from the Ventana license agreement that were mailed by
Ventana to the Connecticut address that AI formerly used as its
corporate mailing address.  Dr. and Mr. McKeon allegedly removed
checks from that address when they retrieved their mail with the
intent of depriving AI of its rightful income.  That fact,
coupled with allegations that Ms. McKeon received deceptive

correspondence from counter-defendants at her home address,
suggest that the last acts required to render counter-defendants
liable on the sixth counterclaim brought pursuant to CUTPA also
occurred in Connecticut.

### C.    Counterclaim under CUTPA

Counter-defendants next contend that, even if Connecticut
law applies, the first counterclaim under CUTPA must be dismissed
because 1) this case involves an intra-corporate dispute to which
CUTPA, like Chapter 93A, does not apply and 2) the three-year
statute of limitations has run because the counter-defendants
incorporated AMI in June, 2008 and Ms. McKeon did not file her
counterclaim until April, 2012.

Although purely intra-corporate conflicts are not subject to
the prohibitions of CUTPA, actions beyond the governance of the
corporation designed "to usurp the business and clientele of one
corporation in favor of another ... fit squarely within the
provenance of CUTPA."  Fink v. Golenbock, 238 Conn. 183, 212
(1996).  Such a violation may be found here because Dr. and Mr.
McKeon were allegedly interfering with AI's contractual
relationships and misappropriating AI's income to finance the
competing interests of AMI.  Ms. McKeon avers that AI and AMI are
separate and competing entities and that Dr. and Mr. McKeon 1)
are diverting AI's revenue for the benefit of AMI and 2) have
usurped AI's clients or otherwise undermined or modified AI's

contractual relationship with Harvard or Ventana.  While counter-defendants claim that, in practice, AI and AMI are the same entities, as a legal matter they remain distinct.

This finding is consistent with the Court's prior dismissal of Count XI of the original complaint alleging a violation of Chapter 93A.  That claim against Ms. McKeon was based upon her alleged omissions made while conducting the affairs of AI, which the Court identified as a "joint business venture" between her and counter-defendants Dr. and Mr. McKeon in particular.  By contrast, Ms. McKeon here alleges that counter-defendants diverted revenue away from the parties' joint business venture (AI) and into a separate entity (AMI).

Counter-defendants' invocation of the statute of limitations is also unpersuasive.  An action brought under CUTPA may not be brought more than three years after the occurrence of a violation. Conn. Gen. Stat. § 42-110g(f).  The allegations within the Counterclaim do not relate to the incorporation of AMI but rather to the misappropriation of five checks payable to AI from Ventana between March and December, 2010 and to the alleged ongoing interference of the counter-defendants with AI's contractual relationships.  Those alleged unfair trade practices occurred, if at all, within three years of the filing of the counterclaim and therefore are not barred.

### D.    Counterclaim for Constructive Trust

Finally, counter-defendants assert that the sixth counterclaim for "constructive trust" must be dismissed because it is a remedy, not a cause of action. See, e.g. Gold v. Rowland, 994 A.2d 106, 123 n.22 (Conn. 2010) ("The imposition of a constructive trust by equity is a remedial device designed to prevent unjust enrichment.").  Notably, counter-defendants do not assert that imposition of a constructive trust, if the counterclaims are proven, would be an inappropriate remedy; to the contrary, the conduct at issue, if it occurred, would call for just such a remedy. See Cadle Co. v. Gabel, 794 A.2d 1029, 1037 (Conn. App. 2002) (stating constructive trust arises "whenever another's property has been wrongfully appropriated").

The Court agrees with Ms. McKeon that dismissing this counterclaim on the invoked grounds would elevate form over substance.  This is particularly true where the counterclaim for constructive trust avers that counter-defendants' retention of property belonging to AI is contrary to the principles of equity and good conscience and would unjustly enrich them at the expense of AI and its shareholders.  This language is sufficient to give notice of a claim for unjust enrichment that seeks as a remedy the imposition of a constructive trust and the Court will construe Count VI as such.

**ORDER**

In accordance with the foregoing,

1)    defendant-counterclaimant's motion for preliminary
      injunctive (Docket No. 51) is **DENIED,** and

2)    plaintiff-counter-defendants' motion to dismiss
      verified counterclaims (Docket No. 56) is **DENIED.**


**So ordered.**

                              /s/ Nathaniel M. Gorton
                              Nathaniel M. Gorton
                              United States District Judge
Dated March 21, 2013